**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

JAMES GENCARELLI,

                            Plaintiff,         1:20-CV-85
                                        (TJM/CFH)

      v.

THE COCA-COLA COMPANY; LIBERTY
COCA-COLA BEVERAGES,

                            Defendants.

---

**APPEARANCES:**

James Gencarelli
510 Broadway (3G)
Saratoga Springs, New York 12966
Plaintiff pro se

### REPORT-RECOMMENDATION & ORDER

Plaintiff pro se James Gencarelli commenced this action on December 26, 2019 with the filing of a complaint and, in lieu of paying this Court's filing fee, an application for leave to proceed in forma pauperis ("IFP"). Dkt. Nos. 1 ("Compl"), 2. Plaintiff also filed an application for a pro se ECF password and log-in. Dkt. No. 3. After reviewing plaintiff's application, the undersigned concludes that plaintiff may properly proceed IFP. Dkt. No. 2.[1] Plaintiff filed an amended complaint on April 6, 2020. Dkt. No. 6. Presently pending before the Court is review of plaintiff's amended complaint pursuant to 28 U.S.C. § 1915.

---

[1] Plaintiff is advised that, despite his IFP status, he is still required to pay all costs and fees he may incur in this action, including, but not limited to, copying fees and witness fees.

## II. Legal Standard

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). It is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting her to proceed with her action. Where, as here, a plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted). However, this does not mean the Court is required to accept unsupported allegations that are devoid of sufficient facts or claims. Although detailed allegations are not required at the pleading stage, the complaint must still include enough facts to provide the defendants with notice of the claims against them and the grounds upon which these claims are based. See, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007). Ultimately, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

Pleading guidelines are set forth in the Federal Rules of Civil Procedure. Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief." See FED. R. CIV. P. 8(a)(2). "The purpose . . . is to give fair notice of

2

the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include:

> (1) a short and plain statement of the grounds for the court's jurisdiction . . .;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought . . . .

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d). Further, Rule 10 of the Federal Rules provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D.

352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative . . . to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal . . . is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted). In such cases of dismissal, particularly when reviewing a pro se complaint, the court generally affords the plaintiff leave to amend the complaint. Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir. 1995). A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

### III. Discussion

#### A. Allegations in Complaint

Plaintiff contends that on July 16, 2019, he drank from a can of Coca-Cola that he purchased. Dkt. No. 6 at 1. After consuming "some quantity of the liquid plaintiff suffered intense painful burning on the lips, throat and mouth, causing much pain, soreness, and discomfort." Id. Plaintiff provides that he had the can of soda tested, which resulted in findings that "[t]he PH was approximately 1 value lower than that of

4

Coca-Cola (2.52).  In layman's terms, this means it is nearly 10x more acidic that COCO-COLA [sic] is intended to be."  Id.  He further provides that, "[u]nder further evaluation, using the addition of barium chloride to indicate the addition of specifically Sulfuric Acid, it was found to be positive."  Id. at 2.  Plaintiff alleges that Coca-Cola uses sulfuric acid to remove "oily residue" from cans as part of the canning process.  Id.

Plaintiff argues that this Court has jurisdiction of this matter pursuant to diversity jurisdiction as plaintiff is a citizen of New York and defendant The Coca-Cola Company is a citizen of Georgia . Dkt. No. 6 at 3.  Plaintiff indicates that Liberty Coca-Cola Beverages LLC is a citizen of Pennsylvania, and indicates that Liberty "produces and supplies non-alcoholic beverages," "a range of soft drinks and bottled water, as well as offers packaging and distribution services.  Liberty Coca-Cola Beverages serves customers in the United States."  Id. at 3-4.  Plaintiff demands $200,000 for "physical injury," $200,000 for "Non-pecuniary Damages" and "[f]urther relief as this Court may deem appropriate and equitable."  Id. at 6-7.

## B.  Analysis

### 1.  Venue

Plaintiff indicates[2] that he originally commenced this action in the United States District Court for the District of New Jersey.  In an Order filed on November 11, 2019,

---

[2] Although plaintiff did not include these documents with his amended complaint, in light of special solicitude and for purposes of this Report-Recommendation & Order only, the Court will consider those documents appended to the original complaint relating to plaintiff's action before the District of New Jersey.  See Dkt. No. 1-1; dkt. no. 6.  No other portion of the original complaint has been considered in this review.

the District of New Jersey granted plaintiff's IFP application and dismissed plaintiff's complaint "without prejudice for failure to state a claim upon which relief may be granted" and provided plaintiff with thirty days to file an amended complaint "addressing the issues outlined by the Court's Memorandum Opinion; failure to do so will result in closing of this matter." Dkt. No. 1-1 at 5. On November 22, 2019, plaintiff petitioned the Third Circuit Court of Appeals for a "writ of mandamus" after failing to hear from the District Court of New Jersey for five weeks after filing his complaint. Id. at 3. Plaintiff states that he "proceeded to motion for voluntary dismissal of the complaint, (pursuant to Fed. R. Civ. P. 41). (in lieu of negotiation with the defendants)." Dkt. No. 1-1 at 3. "On the 5th of December 2019, the DCNJ 'closed the matter without prejudice.'" Id. "On plaintiff's 'voluntary dismissal of appeal' the Third Circuit 'dismissed the matter.'" Id. at 3. Plaintiff indicates that he has since moved to Saratoga County, New York and wishes to re-commence this matter in the Northern District of New York "in the venue where plaintiff resides." Id. He suggests that, because the District of New Jersey dismissed the matter without prejudice, venue should be considered proper in the Northern District of New York." Id.

Although plaintiff included the Order from the District of New Jersey granting his IFP application[3] and dismissing his complaint without prejudice and opportunity to amend as well as the Order granting "voluntary dismissal" of his complaint without

---

[3] The District of New Jersey expressed concern about plaintiff's access to additional assets, including those of his wife, but concluded, on balance, that IFP should be granted. The Court observes that plaintiff's IFP application to this District did not include his wife's assets. However, on balance, the Court will grant plaintiff's IFP application. As the District of New Jersey noted, however, should it be later determined that plaintiff has additional assets that he did not reveal to the Court, including access to his wife's assets, sanctions may be pursued.

6

prejudice, he neglected to include the Memorandum Opinion[4] that reviewed the merits of his complaint. Within that Order, the District of New Jersey noted plaintiff's habit of commencing actions in various districts throughout the United States and concluded, on the merits, that plaintiff's complaint before that Court failed to meet the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure.

    Here, the Court acknowledges that plaintiff appears to have a litigious history, bringing actions in various courts throughout the country, not solely limited to those in which he resides. See exh 1. Further, rather than seek to amend his complaint after the District of New Jersey identified pleading defects, despite being given the opportunity to do so, plaintiff sought dismissal of the case without prejudice and commenced a new action in a new court. Although the Court has some concern that plaintiff may be engaging in forum shopping, potentially seeking to commence an action within a district he may feel will be more favorable, on balance, because the matter had not proceeded beyond the initial review stage in the District of New Jersey and no defendants had been served, balancing of factors weighs in favor of finding venue to be proper in this District at this time.[5]

### 2. Review of Complaint

New York law provides for product liability claims "under theories of negligence, strict liability, or breach of express or implied warranty." 28

---

[4] The District of New Jersey's Memorandum Opinion is appended to this Report-Recommendation & Order.

[5] The undersigned notes that a different result may have occurred had plaintiff's complaint been served and defendants had appeared in the District of New Jersey.

7

> Under New York law, "a plaintiff may allege that a product is defective for any one of the following three reasons: (1) design defect, (2) a failure to warn, or (3) defect as a result of a manufacturing flaw."

Ohuche v. Merck & Co., No. 11 CIV. 2385 SAS, 2011 WL 2682133, at *2 (S.D.N.Y. July 7, 2011).[6]

### a. Vicarious Liability/Negligence

Addressing first plaintiff's "vacarious [sic] liability" claim, plaintiff contends that defendants failed to provide "reasonably safe facilities in the manufacture and production of their product" by "failing to oversee, supervise and instruct employees in the production and manufacture of their product to the public." Dkt. No. 6 at 3. Due to defendants' "negligence in failing to provide a duty of reasonably [sic] care, plaintiff suffered actual physical and emotional damages." Id. at 3-4.

> Strict products liability is not vicarious liability, but like vicarious liability, it creates an exception to the usual rule that limits one's liability to one's own wrongdoing. It is the established rule that an employer is liable for personal injuries to or death of another person, or injury to another person's property occasioned by its employee's negligence, fraud, misconduct, or other unlawful act, when done within the scope of its authority. Thus, a druggist may be held liable for the negligent act of an employee.

86 N.Y. Jur. 2d Products Liability § 43. It is not clear if, in pleading "vicarious liability" that plaintiff is seeking to hold defendant Coca-Cola liable for the alleged actions of defendant Liberty. In addressing the applicability of vicarious liability in products liability cases, New York State courts have held that "[a]ny analogy to vicarious liability under the Labor Law (Allen v. Cloutier Constr. Corp., 44 N.Y.2d 290, 405 N.Y.S.2d 630, 376

---

[6] Unless otherwise noted, unpublished decisions cited herein have been provided to plaintiff.

8

N.E.2d 1276), respondeat superior, or the Vehicle and Traffic Law—instances in which liability is fixed upon another without regard to any volitional act—is clearly flawed." Rosado v. Proctor & Schwartz, Inc., 66 N.Y.2d 21, 26, 484 N.E.2d 1354, 1357 (N.Y. 1985) ("A strict products liability action is not analogous to vicarious liability, resulting in the imposition of liability without regard to fault.  A manufacturer is held accountable as a wrongdoer, and, while the proof that must be adduced by a plaintiff is not as exacting as it would be in a pure negligence action, a prima facie case is not established unless it is shown, among other things, that in relation to those who will use it, the product was defective when it left the hands of the manufacturer because it was not reasonably safe.").  Accordingly, it is recommended that plaintiff's "vicarious liability" claim be dismissed.  However, as it is not entirely clear what plaintiff seeks to accomplish in pleading this claim, it is recommended that this dismissal be without prejudice should, at some future point, plaintiff be able to reasonably articulate his intention.

### b. Failure to Warn

As for plaintiff's "product liability" claim, plaintiff alleges that defendants' "product that caused the harm was not reasonably fit, suitable or safe for its intended purpose" insofar as the can of Coca-Cola plaintiff consumed "deviated from the original specifications and formula."  Dkt. No. 6 at 4.  Further, plaintiff contends that defendants "failed to issue adequate warnings or instructions."  Id.  Although plaintiff does not explicitly identify it as such, it appears he is attempting to plead a claim here for failure to warn.

9

"To make out a prima facie case for negligent failure to warn under New York law, 'a plaintiff must show that (1) the manufacturer had a duty to warn; (2) the manufacturer breached such duty so that the product is rendered defective, i.e. reasonably certain to be dangerous; (3) the defect was the proximate cause of the plaintiff's injury; and (4) that the plaintiff suffered loss or damage.'" Rogers v. Westfalia Associated Techs., Inc., 485 F. Supp. 2d 121, 128-29 (N.D.N.Y. 2007) (internal citation omitted). "A manufacturer has a duty to warn against latent dangers resulting from foreseeable uses of its product of which it knew or should have known." In re N.Y.C. Asbestos Litig., 27 N.Y.3d 765, 59 N.E.3d 458, 470 (N.Y. 2016) (internal citation omitted). "Under New York law failure to warn claims are identical under strict liability and negligence theories." DiBartolo v. Abbott Labs., 914 F. Supp. 2d 601, 611 (S.D.N.Y. 2012).

Here, although lacking in detail, plaintiff has arguably sufficiently pleaded a cause of action for negligent failure to warn. Plaintiff does not explicitly provide facts for supporting his claim that defendants had a duty to warn him; however, in light of special solitude, his pleadings suffice at this early stage insofar as he contended that the product was defective insofar as it was not safe to consume due to its alleged contamination with sulfuric acid from the canning process and that he suffered injury from drinking the contaminated product. Further, although plaintiff does not explain how he suffered loss or damage from his consumption of the product, he does allege that he suffered injury. Thus, at this early stage and in light of special solicitude due to the pro se plaintiff, the undersigned is of the belief that he had adequately pleaded this claim

and thus, it should proceed.[7]

### c. Negligence Per Se

In plaintiff's negligence per se claim, plaintiff alleged that defendants owed him a duty of care as a member of a "class (protecting public from tainted, harmful and contaminated foods) for whose benefit those laws and safety regulations were passed." Dkt. No. 6 at 4.  Plaintiff contends that defendants violated "21 U.S. Code § 1-26 Food Safety Modernization Act (FSMA), N.J.R.S. Title 24. Section 24:5-8 General Food Adulterations. 21 U.S.C. § 342. Adulterated Foods, New York Consolidated Laws, Agriculture and Market Law - AGM §200." Id. at 5.   Plaintiff specifies that defendants owed him a duty of care, suffered "the same type of harm that the laws, codes, and statutes were intended to prevent, resulting in without limitation, physical and emotional damages as set forth above, from the conduct of defendants, which was a substantial factor causing that harm."  Id. at 5.

> State and federal statutes and regulations set forth standards by which
> many products are manufactured, marketed and sold.  Violation of
> such requirements is generally treated as negligence per se. This
> doctrine relieves the plaintiff of establishing specific common law
> negligence elements that the defendant owed a duty to the plaintiff and
> that the defendant breached a duty to the plaintiff.

City of New York v. A-1 Jewelry & Pawn, Inc., 501 F. Supp. 2d 369, 415 (E.D.N.Y. 2007) (citing Restatement (Second) of Torts §§ 282-288B (1965)).  "[T]he mere '[v]iolation of a statute . . . does not automatically constitute negligence per se.  Only

---

[7] As with all other claims, in so holding the undersigned makes no finding as to whether this claim will be able to withstand a properly filed and supported dispositive motion.

11

statutes designed to protect a definite class of persons from a particular hazard, which persons within the class are incapable of avoiding, can give rise to negligence per se for violation of the statute.'" Timperio v. Bronx-Lebanon Hosp. Ctr., 384 F. Supp. 3d 425, 434 (S.D.N.Y. 2019) (quoting German ex rel. German v. Fed. Home Loan Mortg. Corp., 896 F. Supp. 1385, 1396 (S.D.N.Y. 1995)).

> Moreover, [i]n order to warrant a finding of negligence per se for a statutory violation, the statute must evidence "an intention, express or implied, that from disregard of [its] command a liability for resultant damages shall arise 'which would not exist but for the statute.'" Three factors are of central importance in this inquiry: (1) whether the plaintiff is one of the class for whose benefit the statute was enacted, (2) whether a finding of negligence per se for violation of the statute would promote the legislative purpose, and (3) whether creation of such liability would be consistent with the legislative scheme.

Id. at 44-435 (quoting German, 896 F. Supp. at 1397) (additional citation omitted).

As for plaintiff's reference to the Food Safety Modernization Act, it is not clear on which section of this statute plaintiff is attempting to rely. He states that defendants "violated" "21 U.S. Code § 1-26 Food Safety Modernization Act (FSMA)" but the Court cannot locate §1-26 of this statute. To the extent plaintiff means to argue that defendants violated sections one through twenty-six, the statute is also not categorized as such. Regardless, plaintiff's mere reference to this statute does meet minimum pleading requirements because plaintiff fails to explain how defendants violated this statute and how it applies here. Further, he fails to demonstrate that such statute would recognize a private right of action. Prohaska v. Sofamor, S.N.C., 138 F. Supp. 2d 422, 448 (W.D.N.Y. 2001) ("New York law holds defendants liable for negligence per se if the following factors are satisfied: (1) the plaintiff is among the class of people for whose

12

particular benefit the statute had been enacted; (2) recognition of a private right of action would promote the legislative purpose behind the statute; and (3) creation of the right would be consistent with the overall legislative scheme.") (internal citation omitted).

Plaintiff makes passing reference to 21 U.S.C. § 342 which is the Federal Food, Drug, and Cosmetic Act ("FFDCA"), 21 U.S.C. §§ 301-399. Section 342 references "Adulterated Substances." Plaintiff does not explain how defendants "violated" this section, "whether the plaintiff is one of the class for whose benefit the statute was enacted," "whether a finding of negligence per se for violation of the statute would promote the legislative purpose," and "whether creation of such liability would be consistent with the legislative scheme." German, 896 F. Supp. at 1397

Next, plaintiff refers to New York Consolidated Laws, Agriculture and Market Law - AGM §200. Again, he does not explain how this law applies or how he alleges defendants violated this law. This law appears to be a New York State counterpart to the FFDCA. For the same reasons plaintiff's claim must fail under the federal statutes he cites, plaintiff fails to demonstrate negligence per se with relation to this New York State statute as plaintiff does not explain how defendants "violated" this section, "whether the plaintiff is one of the class for whose benefit the statute was enacted," "whether a finding of negligence per se for violation of the statute would promote the legislative purpose," and "whether creation of such liability would be consistent with the legislative scheme." German, 896 F. Supp. at 1397.

Lastly, plaintiff cites to a New Jersey State Law, N.J.R.S. Title 24. Section 24:5-8 General Food Adulterations. First, as plaintiff has chosen New York State to be his

venue of choice, he fails to explain why New Jersey law should apply.  Second, even if plaintiff can demonstrate that this Court has jurisdiction to review New Jersey state law, this claim still fails as plaintiff does not explain how defendants "violated" this section, "whether the plaintiff is one of the class for whose benefit the statute was enacted," "whether a finding of negligence per se for violation of the statute would promote the legislative purpose," and "whether creation of such liability would be consistent with the legislative scheme."  German, 896 F. Supp. at 1397.  Accordingly, for the reasons stated herein, it is recommended that plaintiff's negligence per se claim be dismissed in its entirety without prejudice.

### d. Breach of Implied Warranty of Merchantability

Plaintiff next pleads a claim for breach of the implied warranty of merchantability.  Dkt. No. 6 at 6.  Plaintiff contends that defendants sold their product in a "defective condition" and, thus, are "liable for injury which results from use of the product when the product is used for its intended or reasonably foreseeable purpose."  Dkt. No. 6 at 6.  He further argues that, "[t]he law implies a warranty by a manufacturer which places its products on the market that the product is reasonably fit for the ordinary purpose for which it is intended.  If it is, in fact, defective and not reasonably fit to be used for its intended purpose, the warranty is breached."  Id.

"Establishing a breach of implied warranty claim requires that plaintiff prove: '(1) that the product was defectively designed or manufactured; (2) that the defect existed when the manufacturer delivered it to the purchaser or user; and (3) that the defect is

the proximate cause of the accident.'" Lewis v. Abbott Labs., No. 08 CIV. 7480 SCR/GAY, 2009 WL 2231701, at *6 (S.D.N.Y. July 24, 2009) (quoting In re American Export Lines, Inc., 620 F.Supp. 490, 518 (S.D.N.Y.1985); see also Plemmons, 2007 WL 950137 at *3. "The 'implied warranty is breached where the product in question is not fit for the ordinary purpose for which it is to be used.'" Id. (citation omitted). "As is the case with a claim for breach of express warranty, a claim for breach of implied warranty requires the plaintiff to establish causation." Nealy v. U.S. Surgical Corp., 587 F. Supp. 2d 579, 584 (S.D.N.Y. 2008) (citing Clarke v. Helene Curtis, Inc., 293 A.D.2d 701, 742 N.Y.S.2d 325, 327 (N.Y. App. Div. 2002) ("The defendant established its prima facie entitlement to summary judgment by demonstrating that there was no causal relationship between its product and the plaintiff's disease, an essential element of the cause of action to recover damages for breach of implied warranty.") (additional citations omitted). "Liability under a theory of implied warranty of merchantability is 'essentially the same' as under a theory of strict products liability." O'Neil, 2020 WL 1149904, at *9.

Here, plaintiff's breach of implied warranty claim appears to plead that The Coca-Cola Company created a manufacturing defect of an improper pH balance in their product relating to the use of sulfuric acid in the canning process. Dkt. No. 6 at 2. He suggests that the soda he consumed was contaminated with sulfuric acid and resulted in an injury: "intense painful burning on the lips, throat and mouth, causing much pain, soreness, and discomfort." Dkt. No. 6 at 1. Although plaintiff does not explicitly plead that the use of the sulfuric acid was the proximate cause of his alleged injury, in light of

15

special solicitude, at this early stage, he has plausibly pleaded causation. Accordingly, as plaintiff alleged that the product was not fit for its ordinary purpose of consumption because it was contaminated with sulfuric acid as a result of the canning/cleaning process and consumption of the contaminated product caused at least some injury, this claim should proceed.

### e.  Strict Liability

Next, plaintiff's "strict liability" claim states as follows: that (1) the Coca-Cola he consumed was

> "defective" because it is not reasonably safe as marketed; (2) the product was used for a normal purpose; (3) the defect was a substantial factor in causing the plaintiff's injuries; (4) the plaintiff by the exercise of reasonable care would not have discovered the defect and apprehended its injury; and (5) the plaintiff would not have otherwise avoided the injury by the exercise of ordinary care."

Dkt. No. 6 at 5.

> To state a claim for strict liability under New York law, a plaintiff must show: "(1) the product is 'defective' because it is not reasonably safe as marketed; (2) the product was used for a normal purpose; (3) the defect was a substantial factor in causing the plaintiff's injuries; (4) the plaintiff by the exercise of reasonable care would not have both discovered the defect and apprehended its danger; (5) the plaintiff would not have otherwise avoided the injury by the exercise of ordinary care." Fane v. Zimmer, Inc., 927 F.2d 124, 128 (2d Cir.1991) (quoting Wolfgruber v. Upjohn Co., 72 A.D.2d 59, 423 N.Y.S.2d 95, 97 (1979), aff'd, 52 N.Y.2d 768, 436 N.Y.S.2d 614, 417 N.E.2d 1002 (1980)); see also Cosby v. City of White Plains, N.Y., No. 04 Civ. 5829, 2007 WL 853203, at *7 (S.D.N.Y. Feb. 9, 2007). "[T]o establish a prima facie case, the plaintiff is required to show that the defectively designed product caused his injury and that the defect was the proximate cause of the injury." Voss v. Black & Decker Mfg. Co., 59 N.Y.2d 102, 463 N.Y.S.2d 398, 450 N.E.2d 204, 209 (1983); see also Derienzo v. Trek Bicycle Corp., 376 F. Supp.2d 537, 560 (S.D.N.Y.

16

2005); Olsovi v. Salon DeBarney, 118 A.D.2d 839, 500 N.Y.S.2d 325, 326 (1986).

Nealy v. U.S. Surgical Corp., 587 F. Supp. 2d 579, 584 (S.D.N.Y. 2008) (quoting Beckford v. Pantresse, Inc., 51 A.D.3d 958, 858 N.Y.S.2d 794, 795 (N.Y. App. Div. 2008) ("Whether the action is pleaded in strict products liability, breach of warranty, or negligence, the consumer has the burden of showing that a defect in the product was a substantial factor in causing the injury.").

> In New York, a plaintiff can raise three types of strict products liability claims: "(1) a manufacturing defect, which results when a mistake in manufacturing renders a product that is ordinarily safe dangerous so that it causes harm; (2) a warning defect, which occurs when the inadequacy or failure to warn of a reasonably foreseeable risk accompanying a product causes harm; and (3) a design defect, which results when the product as designed is unreasonably dangerous for its intended use."

O'Neil v. Argon Med. Devices, Inc., No. 3:17-CV-640 (DNH/TWD), 2020 WL 1149904, at *4 (N.D.N.Y. Feb. 13, 2020), report and recommendation adopted 2020 WL 1140511 (N.D.N.Y. Mar. 9, 2020) (citation omitted). Arguably, plaintiff seeks to proceed under a theory of strict liability for a manufacturing defect and a warning defect.

> To state a claim of manufacturing defect, a plaintiff must allege (1) the product was defective due to "an error in the manufacturing process" and (2) this defect was the proximate cause of the plaintiff's injury. Rosen v. St. Jude Med., Inc., 41 F. Supp. 3d 170, 182 (N.D.N.Y. 2014); see also Williamson, 2013 WL 3833081, at *4. "[A] manufacturing flaw exists when the unit in question deviates in quality and other performance standards from all of the other identical units." Colon ex rel. Molina v. BIC USA, Inc., 199 F. Supp. 2d 53, 85 (S.D.N.Y. 2001) (citing Perazone v. Sears, Roebuck & Co., 515 N.Y.S.2d 908, 911 (App. Div. 1987)). A plaintiff may state a manufacturing defect claim by relying on the circumstances of the accident "if the product did

17

> not perform as intended and the possibility of other causes has been excluded." Richards v. Johnson & Johnson, Inc., No. 5:17-cv-00178 (BKS/ATB), 2018 WL 2976002, at *5 (N.D.N.Y. June 12, 2018) (citing Williamson, 2013 WL 3833081, at *5).

O'Neil, 2020 WL 1149904, at *6. Under New York law, the elements of negligence claims based on design defect, manufacturing defect, and failure to warn theories are the same as those under a theory of strict liability. See Colon ex Rel. Molina v. BIC USA, Inc., 199 F. Supp.2d 53, 83 (S.D.N.Y. 2001) ("Courts have noted that, for the purposes of analyzing a design defect claim, the theories of strict liability and negligence are virtually identical.").

Here, the undersigned recognizes that plaintiff's strict liability claim is simply a recitation of the strict liability standard; however, as the undersigned finds that plaintiff has arguably sufficiently pleaded a claim for failure to warn under a negligence, it also finds that plaintiff's claim should proceed under a strict liability theory. See Colon, 199 F. Supp.2d at 83.

### IV. Motion for Electronic Filing/Access

Plaintiff's request to obtain an ECF password and log-in is denied without prejudice and leave to renew. Pro se plaintiffs are not automatically granted access to e-filing. As plaintiff has not presently demonstrated a special circumstance or need, there is no reason that permitting electronic filing, as opposed to filing traditionally, by mail, will impact plaintiff's ability to effectively litigate this matter. See generally General Order 22. Thus, plaintiff's motion for access to electronic filing is denied without prejudice.

### V.  Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's In Forma Pauperis application, dkt. no. 2, is **GRANTED** for the purpose of filing; and it is

**ORDERED**, that plaintiff's motion to obtain a pro se ECF account and password, dkt. no. 3, **is DENIED without prejudice**; and it is

**RECOMMENDED**, that plaintiff's "vicarious liability" and negligence per se claims be **DISMISSED without prejudice**; and it is further

**RECOMMENDED**, should the District Judge adopt this Report-Recommendation & Order, plaintiff be provided thirty (30) days from the filing date of the the District Judge's Order adopting this Report-Recommendation & Order to file an amended complaint that cures the defects mentioned herein, and if plaintiff fails to file an amended complaint within that time-frame, that the District Judge will direct that the Clerk of the Court return this case to the Magistrate Judge for service of the original complaint on defendants and any unamended claims therein shall be deemed abandoned; and it is

**ORDERED**, that the Clerk of the Court serve this Report-Recommendation & Order on plaintiff in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court "within fourteen (14)

19

days after being served with a copy of the . . . recommendation." N.Y.N.D. L.R. 72.1(c) (citing 28 U.S.C. §636(b)(1)(B)-(C)).  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).[8]

      Dated: April 13, 2020
           Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge

---

[8] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(C).